# In the United States Court of Federal Claims

No. 19-1668C
(Filed: December 17, 2019)
NOT FOR PUBLICATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| LAX ELECTRONICS, INC. d/b/a AUTOMATIC CONNECTOR, *Plaintiff*, v. THE UNITED STATES, *Defendant.* | Pre-award bid protest; Motion to dismiss; Jurisdiction; Standing; Failure to state a claim; Qualified parts list; FAR § 9.205; Transfer of complaint. |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

OPINION

This is a challenge to the Defense Logistics Agency's ("DLA") decision to remove plaintiff from its Qualified Parts List ("QPL") for certain electronic connectors that plaintiff manufactures. Not being on the list, plaintiff may not respond to solicitations from DOD entities for these parts nor may other contractors offer to the government plaintiff's parts. Defendant has moved to dismiss for lack of jurisdiction on the basis that the DLA's removal of plaintiff from the QPL is not an action taken in connection with a procurement or proposed procurement, and thus there is no bid protest jurisdiction under 28 U.S.C. § 1491(b) (2012) over this claim. We agree in part and transfer Count I and dismiss Count II.

BACKGROUND

Plaintiff, LAX Electronics, Inc., doing business as Automatic Connector, supplies electronic connectors to contractors and directly to the government. For over 50 years, plaintiff has had parts listed on DLA's QPL. In June 2019, a DLA Auditor, Sonya Taylor, performed an audit of plaintiff's facility. The resulting audit report identified several deficiencies relating primarily to a recently-issued DLA standard for electric and fiber optic parts (MIL-STD-790). Ms. Taylor's report further states that corrective action for

the identified problems was required within 30 days and that the corrections had to then be accepted by DLA. DLA then sent a letter, dated July 2, 2019, which ordered plaintiff to stop shipment and production of the connectors due to the deficiencies noted in the audit report. Plaintiff responded to DLA with its Corrective Action Reports for the noted deficiencies on August 6, 2019.

Since August, plaintiff alleges that it has further attempted to discuss the matter with DLA on numerous occasions, but DLA has not responded. Instead, on August 13, 2019, DLA sent a notice to plaintiff that LAX may be required to issue a notice to the Government-Industry Data Exchange Program ("GIDEP") for the accused parts. Plaintiff notes that the letter does not mention LAX's CARs nor its attempts to contact DLA regarding the audit report.

Automatic responded two days later by letter, asserting that no GIDEP notice was necessary nor was any required by regulation and that there are in fact no problems with plaintiff's parts. On September 12, 2019, DLA removed plaintiff from the QPL due to repeated program violations and plaintiff's refusal to issue a GIDEP notice. The practical import of which, according to plaintiff, is that it will now be forced to requalify all of its parts at significant and prohibitive cost to it.

On October 9, 2019, DLA sent a letter to LAX, notifying plaintiff of the government's intent to issue a GIDEP alert by the end of the month to alert government and industry members of plaintiff's nonconformance to military specifications. Plaintiff's counsel contacted counsel for DLA and requested that no GIDEP action be taken pending a protest brought by plaintiff. That request was rebuffed.

On October 28, 2019, plaintiff filed suit here. Along with its complaint, it filed a motion for a temporary restraining order and preliminary injunction. We held a status conference on November 1, 2019, at which the issue of jurisdiction was raised by defendant. We thus set a schedule for briefing on a motion to dismiss prior to further action on the merits and plaintiff's request for preliminary relief.

As part of that schedule, we afforded plaintiff an opportunity to supplement its motion for preliminary relief in order to identify a procurement or procurements that the protested action is in connection with, as required by the statute. *See* 28 U.S.C. § 1491(b) (granting jurisdiction

2

over challenges to illegal agency action "in connection with a procurement or a proposed procurement")  It did so primarily in the form of an affidavit from its President, Pierre Lax, which identified two outstanding solicitations for parts that plaintiff offers but can no longer sell to the government after being removed from the QPL, one closing on November 12, 2019 and the other on November 15, 2019.  Copies of those solicitations were attached to the affidavit.  Mr. Lax additionally names three similar solicitations that closed after the filing of the protest and before the date of the affidavit (November 6, 2019).

Defendant filed its motion to dismiss on November 12, 2019.  On November 21, 2019, plaintiff filed both a response to the motion and an amended complaint.  Because an amended complaint would normally moot a pending motion to dismiss, we held a status conference on November 25, 2019, at which the parties agreed that defendant's motion was not moot and to keep the briefing schedule as previously set.  The motion is now fully briefed, and oral argument was held on December 12, 2019.

## DISCUSSION

This court has "jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract . . . or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1).  The issue is whether the alleged agency action is properly considered "in connection with a procurement or a proposed procurement."  Jurisdiction hangs in the balance.

The complaint, as amended, identifies five DLA solicitations "that were open as of October 28, 2019." Am. Compl. ¶ 25.  The closing dates range from October 28, 2019 to November 14, 2019.  *Id.*  The amended complaint further alleges that plaintiff would have been a bidder for these solicitations had it not been for DLA's improper removal of LAX from the QPL.  Plaintiff goes on to allege that DLA failed to follow its own procedures, Department of Defense Manual ("DoDM") 4120.24, Enclosure 14, Sections 11-12 in issuing the stop shipment order, removing plaintiff from the QPL, and threatening to issue a GIDEP alert.  The amended complaint adds the allegation that DLA violated Federal Acquisition Regulation ("FAR") § 9.205(a) by failing to give DLA sufficient time to qualify its products prior to award and failed to give proper notice of its intent to establish a qualification requirement as required by the regulation.

3

Plaintiff seeks an injunction to prevent DLA from issuing a GIDEP alert and to prevent DLA from issuing any more contracts for parts that plaintiff had listed on the QPL, and it seeks a declaration that DLA cannot legally establish a qualification requirement and exclude plaintiff from the QPL without providing a response to LAX's CARs.

Defendant argues that these allegations are insufficient to establish jurisdiction in this court because plaintiff's removal from the QPL was not taken "in connection with a procurement" and because plaintiff lacks standing to challenge any current and future solicitations due to it being unqualified to bid on them. Factually, defendant identifies a DLA audit, unconnected to a specific procurement or planned procurement, as the precipitating event to plaintiff's removal from the list. Plaintiff does not dispute the point.

Defendant relies on this court's and the Federal Circuit's decisions in *Geiler/Schrudde & Zimmerman v. United States*. In *Geiler*, the protestor challenged the award of a contract to upgrade the chiller at a Veterans Administration ("VA") hospital in Kentucky. The solicitation was set aside for service-disabled veteran owned small businesses ("SDVOSBs"). 133 Fed. Cl. 578, 582 (2017). The government moved to dismiss on the basis that the plaintiff had lost its SDVOSB status during the pendency of the protest due to the death of its principle, Mr. Geiler, meaning that the company no longer had standing to bring suit because it could not otherwise be awarded the contract. *Id.* This argument triggered the plaintiff to file a supplemental complaint in which it alleged that revocation of its SDVOSB status was irrational and illegal (lack of due process). *Id.* at 583.

Judge Smith denied the motion as to the original grounds of the protest because standing is determined at the time of filing of suit, but he dismissed plaintiff's supplemental complaint, holding that the decision to revoke the plaintiff's status was not taken in connection with the subject procurement, or any other, and was thus outside of the court's purview under § 1491(b)(1). *Id.* at 584. Plaintiff appealed that dismissal. The Federal Circuit affirmed, finding that the revocation of SDVOSB status was not an action taken in connection with a procurement or proposed procurement. 743 Fed. App'x 974, 976-77 (Fed. Cir. 2018). The circuit court first noted that the loss of status did not affect VA's decision to whom it would award the contract. *Id.* at 977. Plaintiff argued, however, that all future procurements were at issue because, lacking status, it could no longer bid on any work set aside for SDVOSB contractors. The court found that link too tenuous. Although

4

recognizing the broad scope of bid protest jurisdiction under § 1491(b)(1), the Federal Circuit found that the possibility that an agency action would affect future procurements did not "establish that the violation 'clearly affected' a contract's award or performance." *Id.* (quoting *Ramcor Servs. Group, Inc. v. United States*, 185 F.3d 1286, 1289 (Fed. Cir. 1999)).

The court also found support in the statute's requirement that a protest be brought by an "interested party." *Id.* at 977-78. The requirement that an interested party have a direct economic interest in the outcome of a particular procurement suggests that bid protest jurisdiction does not cover allegations concerning "unidentified pending and future procurements." *Id.* at 978 (citing *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1370 (Fed. Cir. 2002)).

Although plaintiff here has identified specific solicitations that it has been prevented from bidding on after its removal from the QPL, we agree with defendant that the removal from the list was not an action taken in connection with a procurement or a proposed procurement. The removal came about after an audit that revealed a paperwork problem with the sourcing of LAX's parts. The audit was not performed in connection with any of the listed procurements from the amended complaint nor any others; according to plaintiff, in fact, it was the result of a several year dispute with DLA's auditor, Ms. Taylor.[1] *See* Am. Compl. ¶¶ 8, 10.

The present case is unlike that relied on by plaintiff in its opposition, *SAI Industries Corp. v. United States*, in which the court exercised jurisdiction over a challenge to the disqualification of the protestor from receiving a contract to produce aircraft tailpipes because it was not a prequalified source. 60 Fed. Cl. 731, 733 (2004). As a preliminary matter, as defendant points out, the issue of jurisdiction was not raised nor treated by the court. More importantly, the case dealt with the pre-approval process for a specific solicitation not a standing QPL. The facts at issue revolved around a solicitation, unlike here. We find missing in the present case the necessary factual connection between the alleged impropriety and a procurement or proposed procurement. Count I then must be dismissed for lack of jurisdiction.

---

[1] Further, as provided by plaintiff, several of the solicitations since LAX's disqualification have asked for plaintiff's parts by name. This suggests that the procuring activity at DLA certainly was not in cahoots with Ms. Taylor to deprive LAX of a chance to bid on a specific procurement.

Plaintiff, however, points out that its amended complaint, in Count II, also alleges a regulatory violation in connection with the five solicitations that it has identified. Plaintiff cites to FAR § 9.205, which states that an agency must, "when possible, give sufficient time to arrange for qualification before award" if and when "an agency determines that a qualification requirement is necessary." 48 C.F.R. § 9.205(a) (2019). Reading the complaint generously, we construe the argument to be that, by not responding to plaintiffs CARs and booting it from the QPL, the agency has failed to give LAX "sufficient time to arrange for qualification before award" as to the five identified solicitations. Although there is no merit to the claim, we have jurisdiction over it.

Count II of the amended complaint puts at issue a regulatory provision that plainly applies to public procurements, and plaintiff has identified five solicitations, and now presumably five awards, that it argues were issued without affording plaintiff "sufficient time to arrange for qualification." *Id.* The allegation draws a sufficient nexus between an asserted violation of a procurement regulation and five specific procurements.[2] Thus, Count II is within the court's bid protest jurisdiction, but that is as far as it goes.

Although within the court's broad protest jurisdiction, the allegation is not otherwise well-founded. Plaintiff argues that the agency violated FAR § 9.205 by issuing the solicitations without first having given plaintiff sufficient notice and more of an opportunity to correct the problems listed in the audit report.

We begin with the obvious. Plaintiff was, until it was removed from the QPL, qualified to sell those parts to the government. It is thus the removal of plaintiff's parts from the qualified list—the bona fides of which are not properly before us—that, according to plaintiff, triggered an obligation to apply FAR § 9.205 and to halt purchasing pending a new notice that a

---

[2] It is no answer, as defendant posits, that plaintiff lacks standing due to it having been bounced from the qualified list. Count II alleges that plaintiff was owed an opportunity to requalify before award of the five procurements identified in the complaint. Standing is determined at the time of the complaint, when these procurements were still not completed. It has thus alleged a non-trivial competitive injury in a pre-award context, but for which plaintiff would have competed for the award. In these circumstances, that is enough to establish standing.

qualification to bid would be applied and to afford time for the ousted offeror to requalify. This reading would flip the purpose of these provisions on its head. The obligations on agencies are triggered by the imposition of a new qualification. That is not what happened here. Rather, an experienced and previously qualified bidder was, independent of any solicitation or new need of the agency, removed from the QPL. DLA's need for qualified parts was unchanged and nothing new imposed. Plaintiff's reading would place an untenable burden on agencies; one that the FAR specifically disclaims.

Subpart 9.202 lays out what an agency must do when it wants to impose a qualification on bidders. Although the agency must issue a justification and afford fair opportunity for bidders to become qualified, 9.202(e) states that "a contracting officer need not delay a proposed award in order to provide a potential offeror with an opportunity to demonstrate its ability to meet the standards specified for qualification." 48 C.F.R. § 9.202(e). Plaintiff's argument is thus a nonstarter and need not delay the entry of judgment.[3] We thus find it appropriate to dismiss Count II for failure to state a claim. *See Constant v. United States*, 929 F.2d 654, 657 (Fed. Cir. 1991) (holding that a *sua sponte* dismissal for failure to state a claim was not a denial of due process because the claim was "untenable as a matter of law" and thus "no additional proceedings could have enable [plaintiff] to prove any set of facts entitling him to relief").

Although Count II fails to state a claim for which this court can afford relief and Count I is miscast as a bid protest, the challenge to plaintiff's removal from the QPL by DLA appears, on its face, to be subject to review as final agency action under the Administrative Procedures Act, jurisdiction over which belongs to the district courts. Defendant's motion posits the same. At the conclusion of oral argument, plaintiff made an alternative request that the court transfer its complaint to the Eastern District of New York should we find jurisdiction in this court wanting. 28 U.S.C. § 1631 gives authority to federal courts to transfer actions in order to cure a want of jurisdiction if the transferring court finds it "to be in the interest of justice." We find a transfer appropriate here.

---

[3] The argument that DLA owed plaintiff, and presumably others, a notice of the imposition of a qualification is likewise unavailing. Plaintiff has been on the QPL for 50 years. Nothing new was imposed on offerors when LAX was removed from the list nor has plaintiff pled any independent prejudice to it from the alleged lack of notice.

CONCLUSION

Because jurisdiction over Count I is appropriate only in district court and because Count II fails to state a claim, the Clerk of Court is ordered to do the following:

1. transfer Count I to the United States District Court for the Eastern District of New York;

2. dismiss Count II for failure to state a claim;

3. enter judgment accordingly.[4]

No costs.

s/Eric G. Bruggink<br>
ERIC G. BRUGGINK<br>
Senior Judge

---

[4] Plaintiff's motion for preliminary relief (ECF No. 2) is denied as moot.